[1] [Reprinted from 1 N. B. R. 389 (Quarto, 91), by permission. 1 Am. Law T. Rep. Bankr. 48, contains only a partial report.]

cannot be doubted that the 20th section expressly confers it. This section, among other things, provides that "if the value of the property (covered by mortgage, pledge, or lien) exceeds the sum for which it is so held as security, the assignee may release to the creditor the bankrupt's right of redemption therein, on receiving such excess; or he may sell the property, subject to the claim of the creditor thereon." This language is too explicit to admit of any doubt in construction. But, clear as is the authority of the assignee to sell mortgaged property subject to the mortgage, I think it is an authority which should not always be exercised. Ordinarily persons prefer to purchase property free from incumbrance. They fear that questions may arise in respect to the amount of the incumbrance, and that they may have difficulty in obtaining a clear title. Therefore, when the debt for which the property is bound as security is due, the interest of creditors will, I suppose, generally be promoted by a sale of the whole property. This may be effected by sale made by the assignee and mortgagee jointly or in pursuance to the judgment of some court of competent jurisdiction. When the amount of the debt claimed by the creditor is not admitted by the assignee, and cannot be agreed between them, of course the assignee should resort to the proper court to ascertain it, and for a sale at the same time. In all cases the assignee will consider the interest of creditors, and should sell property subject to the incumbrance upon it, or seek to have it sold free from incumbrance, accordingly as he thinks the interest of the creditors of the bankrupt will be promoted by the one or the other mode of sale. The clerk will send a copy of this opinion to the assignee.

---

## Case No. 8,695.

### McCLELLAN v. FOSBENDER et al.

[4 Chi. Leg. News, 406.]

District Court, N. D. Illinois. July Term, 1872.

JUDGMENT—DEFAULT—EXCUSE—MOTION TO SET ASIDE—CLOSE OF TERM—ATTORNEY —VIGILANCE.

1. Where the attorneys for the defendants had the files of the papers in their possession, and had mailed them from an interior city on the 7th of October preceding the great fire at Chicago, and afterwards supposing them to have been destroyed, paid no further attention to the case, and the plaintiffs accordingly obtained judgment by default, the papers not having been lost, but being delivered to the clerk after the fire, *held*, the court will not at a subsequent term set aside the judgment.

2. On the authority of Cameron v. McRoberts, 3 Wheat. [16 U. S.] 591, and McMicken v. Perrin, 3 How. [44 U. S.] 507; Cook v. Wood, 24 Ill. 295; and Smith v. Wilson, 26 Ill. 186,—the court has no power to set aside a judgment or decree after the close of the term at which it was rendered.

3. The attorneys for the defendants were not absolved from their responsibility by the mere supposed destruction of the records, but should have exercised increased vigilance to know what steps it was necessary to take to protect the rights of their clients.

[This was an action at law by Edward C. McClellan, assignee, etc., against Philip Fosbender and others.]

Tenney, McClellan & Tenney, for plaintiff. Ingersoll & McCune, for defendants.

BLODGETT, District Judge. This suit was commenced by summons in this court on the 14th day of July, 1871, against Philip Fosbender, Henry Schwabacher, Jacob Schwabacher, Max Newman, and Henry Ullman. All the defendants, except Fosbender, were served with process, and, the case set for trial at the October term, 1871. It was placed upon the trial docket at the March term, 1872, and no defense being interposed, the default of the defendants served with process was rendered, and the damages assessed and judgment rendered by a jury in accordance with the verdict, for the sum of six hundred and ninety-nine dollars and eighty cents, on the first day of April, 1872. A motion is now made to set aside this judgment, upon substantially the following grounds:

It appears from the affidavits filed in the case, that one of the attorneys for the defendant came to this city from Peoria, where he resides, on or about the 4th of October last, with the intention of putting in a plea in this case, and for that purpose obtained the papers from the clerk of this court, and, inadvertently, put the papers in his pocket and took them away from the court house. On arriving at Peoria, on Saturday, the 7th of October, he found he had the papers with him, and immediately mailed them to the clerk. On Monday, the 9th of October, he learned that a fire had occurred in this city, which had destroyed the entire records of the federal courts, and assumed that the papers in this case were destroyed with the papers in the other cases pending in the court. It seems, however, that the papers in this case did not come to the hands of the clerk through the post-office until several days after the fire, and were, therefore, preserved intact. The March term being the first term for the trial of causes after the fire, this case was placed on the trial calendar by the plaintiff's attorneys, as the defendants' attorneys swear, without any knowledge on their part that the case was placed on the trial calendar. The defendants' attorneys seem to have contented themselves with the assumption that the papers in this case must have been destroyed. They made no inquiries, and, therefore, received no information as to the status of their case after the fire.

It will be observed that the judgment in this case was rendered in what is technically known as the "December Term," which commenced on the third Monday in December last, and certainly ended before the first Monday in July, there being by statute but two terms of this court, one commencing the third Monday of December, and the other

the first Monday in July, although, by a rule or order entered some years since, it is provided that there shall be several terms, known as adjourned terms, intermediate between the regular statutory July and December terms, and the judgment in this case was rendered at the adjourned term, known as the "March Term"; and this motion not having been made until after the July term had commenced, it is objected on the part of the plaintiff that the court cannot now entertain this motion, inasmuch as the term at which the judgment was rendered has elapsed; and the only question in my mind is whether the court now has such control over its records as will allow us to grant the prayer of the motion.

The supreme court of the United States, in the case of Cameron v. McRoberts, 3 Wheat. [16 U. S.] 591, held, that a circuit court in an equity case had not power over its decree so as to set the same aside, on motion, after the expiration of the term in which the decree or judgment was rendered. This ruling was followed again by the supreme court, and the case just cited quoted approvingly in the case of McMicken v. Perin, 18 How. [59 U. S.] 507; so that the law seems abundantly settled by the supreme court of the United States, to the effect that after the lapse of the term at which a judgment or decree is entered the court has no power over its records to set aside a judgment or decree. If there has been any error in the proceedings it must be corrected by a writ of error or by appeal. In the case of Cook v. Wood, 24 Ill. 295, the supreme court of this state reviews quite at length some of the earlier decisions of our state court, and finally come to the conclusion that the power to set aside a default is a discretionary power, but hold that it must be exercised during the term at which the default was taken, and whilst the record, in legal contemplation, is still under the control of the court. "The judgments during the term," says the court, "are then in fieri, and are amendable at common law. When the judgment is perfected by the solemn consideration of the court, and duly entered on the records of the court, and the term closed, and the court adjourned, the same court which rendered the judgment cannot have, and ought not to have, any supervisory power over it at a subsequent term, except to amend it in mere matter of form on notice to the opposite party." The rule thus laid down by the supreme court of Illinois is followed in the case of Smith v. Wilson, 26 Ill. 186.

It would then seem clearly established by the authorities which I have cited, and numerous others which might be cited, from the reports of the adjudged cases in the circuit and district courts of the United States, that the rule is inflexible that after the term has elapsed the court has no power over its record to set aside the judgment, and grant the defendant leave to plead. If

the term had not expired, the court might, in view of the defense set up in this case, or which is said to have existed by the affidavits which are filed, allow the defendants to come in and plead upon terms. But that discretion is now gone from the court, and the defendants must abide by the results. I do not fully indorse the argument made by the defendants' counsel that they were absolved from all responsibility touching this case by the mere fact that it was understood that the records were destroyed. The case was still in court, and it was the defendants' duty to have kept advised of what was done. Their duty required them, notwithstanding the destruction of the record, or the supposed destruction of the record, to watch the proceedings of the court, and instead of the fact that the records were destroyed being an excuse for want of vigilance, it seems to me to have called for increased vigilance on their part, in order that they might know what steps it was necessary to take in order to protect their rights. They had no right to rest upon the assumption that the records were destroyed, and therefore they had nothing more to do. They were bound in the first place to make inquiry to ascertain whether these papers which had been mailed on the 7th of October, actually came to hand before the time of the fire. If the attorney had considered the subject he must have known, or, at least, the suggestion must have occurred to him that it was doubtful whether a letter mailed at Peoria on Saturday morning would have been delivered to the clerk before the fire occurred, which was on Sunday night. He might have assumed that these papers with the mail matter were burned, but it was almost equally as notorious that the mail matter of the post office was saved as it was that the records of the court were burned. The motion, therefore, must be overruled.